Christopher J. Cannon (No. 88034)
SUGARMAN & CANNON
737 Tehama Street, No. 3
San Francisco, CA. 94103
Telephone: (415) 362-6252
Facsimile: (415) 362-6431
E-mail: chris@sugarmanandcannon.com

Attorney for Defendant,
ELLIOT LEUNG

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>ELLIOT LEUNG,<br><br>Defendant. | Case No. 3:23-CR-00183-SI<br><br>**ELLIOT LEUNG'S SENTENCING MEMORANDUM**<br><br>Hearing date: December 13, 2024<br>Time: 11:00 a.m.<br>Court: Hon. Judge Susan Illston |

TABLE OF CONTENTS

I. INTRODUCTION ... 1

II. THE GUIDELINES OVERSTATE THE SERIOUSNESS OF THE CONDUCT IN THIS CASE. ... 1

III. A DOWNWARD DEPARTURE OR VARIANCE IS APPROPRIATE IN THIS CASE. ... 2

A. A DOWNWARD DEPARTURE OR VARIANCE IS APPROPRIATE UNDER 18 U.S.C. § 3553. ... 2

B. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE OFFENDER INDICATE THAT A SENTENCE OF PROBATION IS APPROPRIATE IN THIS CASE. ... 5

C. PROBATION IS AVAILABLE AS A SENTENCE IN THIS CASE, AND PROBATION IS AN APPROPRIATE SENTENCE IN THIS CASE ... 8

IV. THE GUIDELINES THEMSELVES RECOGNIZE THE OFFENSE LEVEL MAY OVERSTATE THE SERIOUSNESS OF THE OFFENSE. ... 8

V. THE SERIOUS SOCIAL CONSEQUENCES AND FINANCIAL PENALTIES IN THIS CASE ARE SUFFICIENT TO DETER MR. LEUNG AND OTHERS. ... 9

VI. THERE IS LITTLE CHANCE OF RECIDIVISM IN THIS CASE. ... 9

VII. CONCLUSION ... 11

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Kimbrough v. United States*,
552 U.S. 85, 101 (2007)....................................................................................3

*United States v. Amezcua-Vasquez*,
567 F.3d 1050 (9th Cir. 2009) ...........................................................................8

*United States v. Booker*,
543 U.S. 220 (2005)......................................................................................2, 4

*United States v. Carty*,
520 F.3d 984 (9th Cir. 2008) .............................................................................3

*United States v. McIntosh*,
833 F.3d 1163 (9th Cir. 2016) ...........................................................................5

**Constitutional Provisions**

18 U.S.C.

§ 3553..........................................................................................................2, 3, 5

§ 3553(a) .....................................................................................................2, 3, 4

§ 3553(a)(2) ...............................................................................................2, 3, 4

**Other Regulations**

U.S.S.G. § 2B1.1...................................................................................................8

U.S.S.G. § 5K2.20 .................................................................................................1

**Other Authorities**

https://www.ussc.gov/research/research-publications/2009-report-alternative-sentencing-federal-criminal-justice-system. .........................................................4

William J. Stuntz, *The Collapse of American Criminal Justice* .............................10

## I. INTRODUCTION

Elliot Leung was involved in the marijuana business, which is legal in California. Unfortunately, Elliot's association with other individuals involved with harder drugs led to his arrest in this case. The probation report recognizes that Elliot Leung has taken his conduct extremely seriously, has successfully started a new business, and is unlikely to re-offend. Incarceration will provide no benefit to society and would be a severe setback to Elliot's future and wish to build a stable life with his partner.

The Guidelines in this case allow for a sentence of probation. The circumstances surrounding Leung's crimes and Leung's rehabilitation since his arrest support a substantial variance for Leung's aberrant conduct. See U.S.S.G. §5K2.20, Aberrant Behavior (Policy Statement).

Accordingly, we request the Court impose a sentence of a two years in custody and recognize that Leung's association with harder drugs was aberrant and atypical, and there is no necessity for a lengthy prison sentence. Elliot Leung has learned his lesson and is unlikely to re-offend.

## II. THE GUIDELINES OVERSTATE THE SERIOUSNESS OF THE CONDUCT IN THIS CASE.

The probation report contains a long narrative about the dark web and the actions of other individuals involved in the drug world. Significantly, however, there is no evidence that Leung was involved in many of the transactions involving methamphetamine, cocaine, or fake Adderall pills. Leung certainly knew John Khuu and Thinh Phuoc Nguyen, and on one occasion, intervened to assist Khuu when a buyer determined that the Adderall was fake, but the discovery demonstrates that Leung was primarily involved in the growing and sales of marijuana. There is no evidence to support the claim in paragraph 19 of the PSR that Leung stored fake Adderall at the property he rented on Starview. That Adderall was stored at the Norfolk location, which

almost operated as a social club for many people involved in the drug business. Leung was interested primarily in marijuana. It is significant that in the conversation between Khuu and Nguyen about the searches, a conversation to which Leung was not a party, Nguyen indicates that Leung had not cleaned up Starview prior to the search. If Leung was storing Adderall for Khuu and Thinh at his rented Starview property, it would have been found in the search as it was at Norfolk. Bags of marijuana were found at the Starview home rented by Leung. The Adderall was found at Norfolk.

Similarly, there is no actual evidence to support the assumption the government makes from text messages between Khuu and the informant that Leung was storing Xanax for the other conspirators. Moreover, Leung's nickname as "Dank" is consistent with his focus on marijuana rather than harder drugs.

Finally, there is no real excuse for Leung's involvement with the plan to support the informant if he would be sentenced to prison, other than to point to Leung's naivete and desire to help out others in a difficult situation. Leung has certainly learned his lesson. He has moved on and is no longer associating with individuals in the drug business.

There are no victims in this case, and Leung will pay for his actions by losing his freedom.

## III. A DOWNWARD DEPARTURE OR VARIANCE IS APPROPRIATE IN THIS CASE.

### A. A DOWNWARD DEPARTURE OR VARIANCE IS APPROPRIATE UNDER 18 U.S.C. § 3553.

In *Booker*, the Supreme Court held that district courts must consider the guideline range as advisory, not mandatory, and that they must also consider the other directives set forth in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220 (2005).

Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

(a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

(b) deterrence;

(c) incapacitation ("to protect the public from further crimes"); and

(d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another factor to be considered along with the others set forth in Section 3553(a) – it sets an independent limit on the sentence a court may impose. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)(referring to the clause as an "overarching provision" that, post-*Booker*, "permits the court to tailor the sentence" to the individual defendant and crime in light of the goals of the Sentencing Reform Act of 1984). The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a) and (a)(2). *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008). "In this sense, the Guidelines are the starting point and the initial benchmark and are to be kept in mind throughout the process." *Id.* (internal quotations and citations omitted). But the Court "may not presume that the Guidelines range is reasonable" and may not afford the Guidelines suggestion any more or less weight than the other section 3553 factors. *Id.*

The Sentencing Commission itself has recognized the need for alternative sentences that do not involve a prison term, stating:

> Effective alternative sanctions are important options for federal, state, and local criminal justice systems. For the appropriate offenders, alternatives to incarceration can provide a substitute for costly incarceration. Ideally, alternatives also provide those offenders with

> opportunities by diverting them from prison (or reducing time spent in prison) and into programs providing the life skills and treatment necessary to become law-abiding and productive members of society.

https://www.ussc.gov/research/research-publications/2009-report-alternative-sentencing-federal-criminal-justice-system. (last accessed 5.23.2024).

While the defense believes that, in this case, the available alternative sanction of probation with a period of home detention is more than sufficient to satisfy the goals of sentencing, we are familiar with sentencing practices in this Court and in other Courts and do not want to make such a large ask that the Court will discount our argument. Accordingly, we are arguing for a relatively shorter prison sentence[1] and are confident that such a sentence will more than satisfy the goals of probation.

In determining if the sentence is minimally sufficient to comply with the purposes of sentencing outlined in Section 3553(a)(2), a court should consider several factors listed in Section 3553(a). These are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the kinds of sentence available;

(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4) the need to avoid unwarranted sentencing disparity; and

(5) the need to provide restitution where applicable.

Neither the statute itself nor *Booker* suggests that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

---

[1] It is easy for people other than the one doing the time to refer to a sentence as short. Every day without freedom can be as hard on the soul as a year at a dead-end job.

Here, all of the Section 3553 factors call out for a lenient sentence in this case.

**B. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE OFFENDER INDICATE THAT A SENTENCE OF PROBATION IS APPROPRIATE IN THIS CASE.**

Elliot Leung grew up in San Francisco and, since his arrest, has demonstrated real entrepreneurial skills. Unfortunately, prior to his arrest, he used those skills in the marijuana business. Elliot thought with a great deal of justification that marijuana was essentially legal in California. No one cared about marijuana, and growing and dealing marijuana was a low-risk profession. There is a lot of support for Leung's beliefs, and in fact, in each fiscal year since FY2015, Congress has included provisions in appropriations acts which prohibit the Department of Justice from using appropriated funds to fund prosecutions in states and territories where marijuana use is legal. See *United States v. McIntosh*, 833 F.3d 1163, 1168 (9th Cir. 2016). Recreational use of marijuana has been legal in California since 2016, and medical marijuana was legal for 20 years prior to that time. The general attitude toward marijuana use in California is one of acceptance and State prosecutions for marijuana in the Bay area a few and far between.

Unfortunately, Elliot did not strictly limit his activities to marijuana, but he also associated with others involved with other drugs. There is no evidence, however, that Leung had a financial interest in the cocaine, methamphetamine, and fake Adderall that his friends were dealing and selling, even though he occasionally helped them in their businesses.

The attached letters from Leung's friends, family, and supporters provide evidence that Leung was not and is not a threat to the community. The details of those letters are significant. The authors have noted Leung's remorse for his conduct and the personal growth since his arrest. Brian Kwa wrote:

> Since this incident, Eli has shown genuine remorse and has taken significant steps to turn his life around. He has taken responsibility for his actions and has been actively working towards a better future. Recognizing my experience in e-commerce, particularly on eBay, Eli proactively sought my mentorship shortly after the incident to help

> guide him in launching his Amazon business. His initiative in seeking professional guidance is a testament to his commitment to personal growth and success.

Exhibit A, Letter from Brian Kwa.

Fiona Huynh has known Elliot for 13 years and notes: "He has always been a loyal friend and very thoughtful without needing to be asked. He is always the first to offer help and goes out of his way to get his friends whatever they need. He's a genuinely selfless person who always puts others' needs before his own." Exhibit B, Letter from Fiona Huynh.

The letter from Olivia Tran is significant because it shows Elliot intervening to assist a person he did not even know at the time whose dog had been attacked by another person's dog. Elliot risked physical injury to separate the dogs and then continued to assist the dog owner in her conversation with the owner of the attacking dog. This is the same type of conduct that led to Elliot's assistance to his friends who were dealing with the harder drugs in this case. Elliot is not one to stand idly by when there is a problem. He will step in and try to reasonably solve the problem. Unfortunately, here, that same character trait led to his involvement with a random person whose dog was being attacked led to his involvement in his friends' fake Adderall transactions. Exhibit C, Letter from Olivia Tran.

Taylor King also reports Elliot stepped up to help him when he was going through hard financial times and that Elliot is determined to build a better future for himself. Since his arrest, Elliot has worked hard to build a new business and has shown he has the ability to be a productive member of society. Exhibit D, Letter from Taylor King.

William Zhou reports that Elliot is a hard worker and "a person of integrity." "Elliot has demonstrated a positive impact to our community and a person that has changed for the Better." Exhibit E, Letter from William Zhou.

Finally, and most significantly, Marisa Nyon, Elliot's partner, reports that Elliot's "empathy, patience, and consideration has deeply shaped our Relationship." Elliot and Marisa plan to get married, and both have become integrated into the other's families. Elliot drives Marisa's parents to their medical appointments. Just as he takes care of his own parents. Exhibit F, Letter from Marisa Nyon.

Elliot and Marisa plan to get married and have realistic plans to stay together through and beyond Elliot's sentence. While not mentioned in the letter, during his probation interview, Elliot disclosed that Marisa is freezing her eggs in the hope they may have children together after Elliot is out of custody and can assist in their care. These are the actions of a responsible couple who are taking on real responsibility and will contribute to society in the Bay Area.

The people who know Elliot the best know he is a valued member of the community and a positive force in his neighborhood. Sending him to prison will impoverish those who deal with him daily. With many criminal defendants, it is difficult to really determine their character. It is often hard to tell if someone claims remorse because they were caught or if they truly regret the crimes they have committed because they recognize they did something wrong. In this case, we are lucky because many of Elliot's supporters have mentioned Elliot's remorse and hopes for the future.

Elliot Leung made a mistake, but that mistake does not define his character. Unfortunately, Elliot Leung ventured out of his marijuana and participated on the margin of this friend's drug deals. Elliot Leung has already punished himself more than any prison sentence ever could. Every day, Elliot Leung must wake up and look in the mirror and see not the hard-working, moral, ethical, charitable person he has always tried to be but a convicted felon who has to delay starting a family. A lengthy prison sentence is not necessary. Elliot Leung has more than learned his lesson.

### C. PROBATION IS AVAILABLE AS A SENTENCE IN THIS CASE, AND PROBATION IS AN APPROPRIATE SENTENCE IN THIS CASE.

There is no mandatory minimum applicable to this case, and there is no statutory or guideline provision forbidding probation.

## IV. THE GUIDELINES THEMSELVES RECOGNIZE THE OFFENSE LEVEL MAY OVERSTATE THE SERIOUSNESS OF THE OFFENSE.

Although the sentence as calculated under the Sentencing Guidelines in this case is far from trivial, the Application Notes to the Guidelines recognize that "There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure is warranted." U.S.S.G. § 2B1.1 Application Note 19(c). On the facts of this case, the unmitigated application of the Guidelines sentence would substantially overstate "the nature and circumstances of [the] offense [and] . . . . the need for the sentence imposed . . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." See *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009). Elliot Leung did not hurt any individuals. His personal effect on any institution was trivial.

We are not attempting to justify Elliot Leung's actions, but as indicated above, would like to point out that Leung's actions hurt no identifiable victims. He participated in others' deals. There is no evidence his personal business went beyond marijuana.

We are not trying to justify the behavior here, and we do not wish to compare Elliot Leung's conduct with that in other cases. It is worthwhile to note, however, that why Elliot was involved with the business of his friends, he was primarily a marijuana dealer, and that is how he should be considered.

**V. THE SERIOUS SOCIAL CONSEQUENCES AND FINANCIAL PENALTIES IN THIS CASE ARE SUFFICIENT TO DETER MR. LEUNG AND OTHERS.**

There is no need for a lengthy prison sentence to deter others from similar conduct. The United States Attorney's Office for the Northern District of California has repeatedly sent out a strong message that it is going after drug dealers. Sending Elliot Leung to jail for a lengthy period will not add to the deterrent value of his conviction. Elliot Leung has reformed himself and begun a new life. The longer he is in jail is simply the time that his contributions to society will be delayed.

**VI. THERE IS LITTLE CHANCE OF RECIDIVISM IN THIS CASE.**

Elliot's experience throughout the entire process, from the investigation through the entry of his plea, has been a learning experience, but he has not let it overwhelm him. He has remained in a stable relationship and started a new legal business. For someone without a serious criminal record, his convictions serve as an unwavering reminder to him and a social brand informing others of his misdeeds. All too often, when navigating a criminal investigation, indictment, and pending conviction, individuals fall apart and find themselves in further legal trouble. Elliot Leung has, on the other hand, remained a contributing member of society by staying out of trouble, learning, and starting a new business.

When counsel first met Leung during Covid, Leung was naive and living what he thought was the high life on his marijuana profits. Elliot has now learned many valuable lessons and knows that he cannot skate by on the edge of legality. He now recognizes and regrets the cost of his association with hard-partying drug dealers. The PSR seems to indicate that Elliot was in continuing contact with John Khuu, In fact, through counsel, Elliot reached out to Khuu and tried to stop the contacts. Eliot has moved on into legal business, and we should encourage that transition and not inordinately delay it.

Leung has grown tremendously since his arrest. He has started an entirely new business and become a responsible member of the community. He has never served time before.

Many social scientists have studied the effects of lengthy prison terms, and they are essentially unanimous in finding that additional time at the back end of a sentence has little social value.

In The Collapse of American Criminal Justice, William Stuntz, Cambridge, Mass. Belknap Press of Harvard University Press, 2011, William Stuntz refers to other studies and concludes:

> As Levitt notes, his relatively high estimate of the value of increased imprisonment does not take full account of declining marginal utility: each additional increment of criminal punishment is worth a little less than the one before. Even if, in the aggregate, increased imprisonment accounted for a substantial fraction of the 1990s crime drop, the value of the last portion of the increase may approach zero or may even be negative as Western emphasizes. Of course, the marginal utility of all things declines; imprisonment is not special in that respect. But given the magnitude of the late twentieth-century increases in the prison population, the odds are high that the value of additional increments of punishment now is trivially small and possibly perverse.

William J. Stuntz, The Collapse of American Criminal Justice, Kindle Locations 3373-3374, (Kindle Edition).

In his case, the Guidelines, derived from methamphetamine dealing that was done by friends, rather than the marijuana business that was Leung's primary activity, grossly overstate the likelihood of recidivism and are unnecessary to deter others from criminal behavior.

Accordingly, there is no need for a lengthy prison sentence in this case.

/
/
/

## VII. CONCLUSION

Elliot Leung has learned an important lesson. His life and the lives of those he knows and loves have been forever changed. Two years in custody is more than enough to punish Leung.

There is no need to impose a lengthy prison term because Leung has already been severely punished for his actions and will not be in a position where he could commit similar crimes in the future.

Dated: December 6, 2024

Respectfully submitted,

/s/ *Christopher J. Cannon* _
Christopher J. Cannon
Attorney for ELLIOT LEUNG